518 A.2d 1150

**Mary N. JONES, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee.**

Supreme Court of Pennsylvania.

Argued May 14, 1986.

Decided Dec. 10, 1986.

Thomas W. Scott, Harrisburg, for appellant.

Charles G. Hasson, Richard F. Faux and Peter C. Layman, Ltd., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

We granted the petition for allowance of appeal of Mary N. Jones to consider whether Section 3 of the Unemployment Compensation Law, 43 P.S. § 752, can operate to deny benefits where a teacher is discharged due to failure to secure a teaching certificate.

Mrs. Jones was a certified teacher in the State of New York. Upon becoming employed as a teacher in Pennsylvania, Mrs. Jones was advised that she lacked three college courses necessary for certification in this Commonwealth. In May, 1980, she received an emergency teaching certificate which was valid for the next following school year and

non-renewable. Mrs. Jones completed two of the three required courses during the summer of 1980, and, due to what she asserts as work pressure and family responsibilities, waited to complete the balance of the coursework during the summer of 1981. However, the last course was not offered locally during the summer of 1981. In late July, Mrs. Jones enrolled in a correspondence course through Louisiana State University, but because of delays in receiving course materials she did not begin the lessons until November 1981. In the meantime, Mrs. Jones applied for a renewed emergency certificate. This renewed emergency certificate was denied by letter dated December 10, 1981, "due to the inadequate rate of progress for completing" the required coursework. Faced with the alternatives of keeping Mrs. Jones employed and suffering a loss in state reimbursement or terminating Mrs. Jones's employment, the School District terminated her on February 5, 1982 due to her failure to obtain a valid teaching certificate.

The referee denied benefits under Section 3 of the Unemployment Compensation Law on the basis that Mrs. Jones was unemployed through her own fault. This decision was affirmed by the Board and Commonwealth Court. 86 Pa. Cmwlth. 405, 485 A.2d 526.

Section 3 of the Unemployment Compensation Law provides:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indigency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance. Security against unemployment and the spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed *through no fault of their own.* The principle of the accumulation of financial reserves, the sharing of risks, and the payment of

compensation with respect to unemployment meets the need of protection against the hazards of unemployment and indigency. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons *unemployed through no fault of their own.*

43 P.S. § 752 [Emphasis supplied.] This provision has, since its enactment, provided an independent basis for denying unemployment compensation benefits where claimants were unemployed due to some activity, often wholly unrelated to their work, which nevertheless bore upon their fitness for employment.

In *Dept. L. & I. v. Unemployment Comp. Bd. Rev.*, 148 Pa. Super. 246, 24 A.2d 667 (1942), claimant's unemployment resulted from his conviction and imprisonment for larceny. The theft was not from his employer. In affirming the denial of unemployment compensation benefits, Superior Court stated, "The Declaration of Public Policy [contained in Section 3] negatives the conclusion that one who has lost his employment because of his commission of a crime involving moral turpitude shall receive compensation for the unemployment which resulted from his own criminal act." *Id.*, 148 Pa.Superior Ct. at 248, 24 A.2d at 668. This Court later expressly approved Superior Court's interpretation of Section 3 in *Barclay White Co. v. Unemployment Comp. Bd. Rev.*, 356 Pa. 43, 50 A.2d 336 (1947) *cert. denied*, 332 U.S. 761, 68 S.Ct. 63, 92 L.Ed. 347 (1947), wherein we quoted *Dept. L. & I. v. Unemployment Comp. Bd. Rev.*, supra, as follows: "[Section 3] is not a mere preamble to the statute, *but a constituent part of it* and is to be considered in construing or interpreting it.... If it is clear that a person's unemployment is the result of his own fault, he is not eligible for compensation under the Act." *Barclay*, supra, 356 Pa. at 47, 50 A.2d at 340. [Emphasis supplied.]

Since these declarations by Superior Court and this Court almost forty years ago, Section 3 has repeatedly been held to supply an independent basis for denying unemployment compensation benefits where a claimant's loss of employment resulted from some *voluntary* activity which related to his ability to perform the work required. See, e.g., *Corbacio v. Unemployment Comp. Bd. Rev.*, 78 Pa. Cmwlth.Ct. 70, 466 A.2d 1117 (1983) (delivery driver whose driver's license was revoked for several off-the-job speeding violations held not entitled to benefits under Section 3); *Huff v. Unemployment Comp. Bd. Rev.*, 40 Pa.Cmwlth.Ct. 11, 396 A.2d 94 (1979), *affirmed, Smith v. Unemployment Comp. Bd., Etc.*, 487 Pa. 448, 409 A.2d 854 (1980) (truck driver whose driver's license was suspended for driving, while away from the job, under the influence of intoxicants, held not entitled to benefits under Section 3); *Strokes v. Unemployment Comp. Bd. Rev.*, 29 Pa.Cmwlth.Ct. 584, 372 A.2d 485 (1977) *affirmed, Smith v. Unemployment Comp. Bd., Etc., supra,* (truck driver whose driver's license was suspended for failure to satisfy a judgment denied benefits under Section 3); *U.C.B.R. v. Ostrander*, 21 Pa.Cmwlth.Ct. 583, 347 A.2d 351 (1975) (union truck driver who was convicted of federal charge of conspiracy to interfere with the civil rights of another denied benefits under Section 3).

Mrs. Jones argues that Section 3 cannot supply an independent basis for denying benefits in light of this Court's recent decisions in *Local 730 v. Com., Unemp. Comp. Bd., Etc.*, 505 Pa. 480, 480 A.2d 1000 (1984); *LeGare v. Com., Unemployment Comp. Bd. Rev.*, 498 Pa. 72, 444 A.2d 1151 (1982) and *Penn Hills Sch. Dist. v. Unemployment Comp. Bd. Rev.*, 496 Pa. 620, 437 A.2d 1213 (1981). However, none of these cases involved an application of Section 3.

*Local 730* in no way implicated application of Section 3. There the question was whether union employees were locked out or on strike for the purpose of application of Section 402(d), 43 P.S. 802(d), of the Unemployment Compensation Law.

*LeGare* involved an employee's dismissal for refusal to submit to a physical examination by an employer where the employee had reported off sick and where the employer had no established policy requiring employees on sick leave to submit to an examination by employer's physician. LeGare's claim for benefits was denied by the Bureau of Employment Security on grounds her refusal to submit to the physical examination constituted "willful misconduct" under Section 402(e), 43 P.S. § 802(e). All the lower tribunals affirmed, but we reversed. In doing so, we simply ruled that LeGare's refusal to submit to a physical examination which was not required by the employer's written sick leave policy would not, under the circumstances, constitute "willful misconduct." Applicability of Section 3 was not an issue in the case.

*Penn Hills* involved a denial of unemployment compensation benefits to school bus drivers who were unemployed due to school closings on account of snow. Commonwealth Court had denied benefits under Section 401(d)(1), 43 P.S. § 801(d)(1), reasoning that the drivers were unavailable for work. In reversing, we thoroughly reviewed the entire Unemployment Compensation Law, 43 P.S. § 751 et seq., for any provision which might operate to deny the bus drivers benefits. This review disclosed no provision which would operate to deny benefits to school bus drivers who were temporarily unemployed due to school cancellations for "snow days." Certainly, those drivers were not in any way responsible for their unemployment as they had no control over when snow fell, how much snow fell, or the decision to close the schools due to snowfall. Thus, Section 3 was simply inapposite to the resolution of the case.

As Mrs. Jones suggests, *Penn Hills* does speak to the remedial nature of the Unemployment Compensation Law, and recites the rule that "an unemployed worker can be denied benefits only by *explicit* language in the Act which clearly and plainly excludes that worker from its coverage," 496 Pa. at 625, 437 A.2d at 1215. However, *Penn Hills* also reiterates the basic proposition that "[t]he objective of the

Act, as declared in section 3, is ... 'to aid those individuals who, through no fault of their own, face the grim prospect of unemployment.' " *Id.*, quoting *Richards v. Unemployment Compensation Board of Review (UCBR)*, 491 Pa. 162, 169, 420 A.2d 391, 395 (1980). Moreover, as demonstrated by forty years of case law, Section 3 provides an explicit exclusion of benefits in cases where persons are unemployed through their own fault. Thus, *Penn Hills* does not represent a departure from the well settled rule that persons who are unemployed through their own fault are not entitled to unemployment compensation benefits.

Next Mrs. Jones argues that persons who are unemployed for work related reasons should only be denied benefits if their conduct constitutes "willful misconduct" as provided in Section 402(e), 43 P.S. § 802(e). We reject this argument. Most, if not all, persons who have been denied benefits under Section 3 of the Unemployment Compensation Law were discharged because somehow their *voluntary* actions impugned their ability to do their work. Some were incarcerated and thus unable to report to work, *Smith v. Unemployment Comp. Bd. Rev.*, 29 Pa.Cmwlth.Ct. 292, 370 A.2d 822 (1977), *affirmed* 487 Pa. 448, 409 A.2d 854 (1980); many lost driver's licenses which were necessary for them to perform their work, see, e.g., *Huff v. Unemployment Comp. Bd. Rev.*, supra; still others may have simply demonstrated criminal tendencies which their employer justifiably found undesirable, see, e.g. *Dept. L. & I. v. Unemployment Comp. Bd.*, supra (employee convicted of larceny). It is clear that activity which does not rise to the level of "willful misconduct" may nevertheless constitute fault under Section 3. Mrs. Jones's argument invites us to ignore the fault provision of Section 3, and we decline to do so.

Finally, Mrs. Jones argues she was not at fault. "Fault" involves a *voluntary* act to which blame attaches. *Strokes v. Unemp. Comp. Bd. Rev.*, supra. It connotes some causal connection between a claimant's *voluntary* action and that claimant's subsequent unemployment. We hold that the

record amply supports a conclusion that Mrs. Jones's unemployment was the result of her own fault.

It is clear that Mrs. Jones delayed pursuing the last required college course work for nearly nine months until the summer of 1981, allowing two college semesters to pass without completing any course work. Mrs. Jones's reason for the delay, as stated supra, was that she was working full time as a teacher in addition to attending to her responsibilities as a wife and mother. While we are not insensitive to the demands placed on a wife and mother who also works full-time outside the home; nevertheless, we cannot escape the conclusion that Mrs. Jones's *freely made decision* to delay the remaining course work until the following summer contributed directly to her inability to complete the required course work before expiration of her emergency teaching certificate. Because the decision to delay pursuit of the remaining required course work was made out of concern for the convenience of Mrs. Jones, the risk that the delay might result in her unemployment properly falls upon Mrs. Jones.

The order of Commonwealth Court affirming denial of unemployment compensation benefits by operation of Section 3 is

Affirmed.

NIX, C.J., filed a concurring opinion.

LARSEN, J., filed a dissenting opinion.

NIX, Chief Justice, concurring.

I join the majority opinion, and write in response to certain assertions that appear in the dissenting opinion by Mr. Justice Larsen. Justice Larsen concedes that, by force of this Court's decision in *Barclay White Co. v. Unemployment Compensation Board of Review*, 356 Pa. 43, 50 A.2d 336, *cert. denied*, 332 U.S. 761, 68 S.Ct. 63, 92 L.Ed. 347 (1947), section 3 of the Unemployment Compensation Law [1]

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, 43 P.S. § 752.

provides an independent substantive basis, in addition to those set forth in section 402,[2] for the denial of benefits to an otherwise qualified claimant. Nevertheless, the dissent argues that we should read section 3 as being coextensive in meaning with the concept of "willful misconduct" under section 402(e). His premise that section 402(e) requires a greater degree of culpability than has been shown in the instant case is irrelevant since section 3 provides a distinct and separate ground of ineligibility. Indeed, as this Court observed in *Department of Labor and Industry v. Unemployment Compensation Board of Review*, 418 Pa. 471, 211 A.2d 463 (1965), section 3 is the "keystone upon which the entire Act rests."

As the majority opinion points out, section 3 of the Unemployment Compensation Law expresses the legislature's intention of providing employees with "[s]ecurity against unemployment ... during periods when they become unemployed *through no fault of their own.*" Having concluded that this section provides an independent basis for the denial of benefits, we are left merely with determining whether the claimant's unemployment in this case was the result of her fault, be it negligent or deliberate. Given the record before us, it is clear that she failed to meet an obligation her employer had every right to require; and thus, she must be charged with fault.

LARSEN, Justice, dissenting.

As the majority observes, the appellate courts of this Commonwealth have frequently interpreted section 3 of the Unemployment Compensation Law (the "Act"), 43 Pa.Stat. Ann. § 752, as providing an independent basis for denying unemployment compensation benefits to claimants who are discharged because of some off-job conduct not directly connected with their work that impaired their ability to perform their duties at work or that reflected upon their fitness for employment. As this Court stated in *Barclay White Co. v. Unemployment Compensation Board of Re-*

2. 43 P.S. § 802

*view (UCBR)*, 356 Pa. 43, 50 A.2d 336, (1947), *cert. denied* 332 U.S. 761, 68 S.Ct. 63, 92 L.Ed. 347 (1947), section 3 "is not a mere preamble to the statute, but a constituent part of it and is to be considered in construing or interpreting it.... If it is clear that a person's unemployment is the result of his own fault, he is not eligible for compensation under the act. ..." *Id.*, 356 Pa. at 49, 50 A.2d at 340 (citations omitted). The Act has been amended many times, yet the General Assembly has not seen fit to alter section 3 or to correct the interpretation that it provides an independent basis for disqualifying a claimant whose unemployment is through his or her fault. Thus, the legislature is deemed to have accepted this long-standing interpretation of section 3. *Id.*, 356 Pa. at 49, 50 A.2d at 340; Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1922(4). Accordingly, I agree with the majority that a claimant *may, in appropriate circumstances,* be disqualified from receiving benefits under section 3 where unemployment has come about through the fault of that claimant. I strongly disagree with the majority, however, as to what circumstances may be found to constitute "fault" sufficient to disqualify a claimant from receiving unemployment compensation benefits.

To the majority, "fault" connotes no degree of culpability—it is sufficient if the claimant's conduct that led to discharge or unemployment was "voluntary." The majority states:

> [Appellant, Ms. Mary Jones,] argues that persons who are unemployed for work related reasons should only be denied benefits if their conduct constitutes "willful misconduct" as provided in Section 402(e), 43 P.S. § 802(e). We reject this argument. Most, if not all, persons who have been denied benefits under Section 3 of the Unemployment Compensation Law were discharged because somehow their *voluntary* actions impugned their ability to do their work. ...

> Finally, [appellant] argues that she was not at fault. "Fault" involves a *voluntary* act to which blame at-

taches. ... It connotes some causal connection between a claimant's *voluntary* action and that claimant's subsequent unemployment. We hold that the record amply supports a conclusion that [appellant's] unemployment was the result of her own fault.

Majority op. at 51–52 (citations omitted; emphasis in original).

In my opinion, this interpretation—that any *voluntary* action on the part of a claimant which "impugned" the claimant's ability to work may constitute "fault" sufficient to disqualify that claimant—is repugnant to the humanitarian, remedial objectives of the Act and is fundamentally at odds with the legislative intent. Initially, it is important to realize that we are not here concerned with an employer's authority or ability to discharge an employee for some conduct which the employer deems inimical to that employer's interests, but rather, whether the discharged employee may be denied unemployment compensation benefits under the Act. *Frumento v. UCBR*, 466 Pa. 81, 86, 351 A.2d 631, 633 (1976). Also, we are not dealing with an interpretation or concept of section 3 "fault" disqualification that has been so consistently defined and applied by the courts as to lead to the conclusion that the legislature has accepted or adopted the courts' interpretation of section 3 "fault." To the contrary, the application of section 3 to disqualify a claimant for "fault" has been rather haphazard.

For example, although the majority may be correct that "most, if not all, persons who have been denied benefits under Section 3 ... were discharged because somehow their *voluntary* actions impugned their ability to do their work," it is also true that most such claimants could have been ruled ineligible for benefits under section 402(e) for "willful misconduct connected with [their] work." *See, e.g.,* the seven Commonwealth Court cases affirmed perfunctorily by per curiam order of this Court in *Smith v. UCBR*, 487 Pa. 448, 409 A.2d 854 (1980) (stating in its entirety: "After a studied consideration of the records, together with the briefs and arguments of counsel, we find nothing sufficient-

ly persuasive to cause us to disturb the orders of the Commonwealth Court in these cases.").[1] Indeed, many if not most cases dealing with the failure of an employee to obtain or retain certification or other licensing requirements necessary for employment have been analyzed under section 402(e) and the claimant's eligibility determined under that section by whether they had engaged in "willful misconduct connected with [their] work." *See, e.g., Adams v. UCBR*, 86 Pa.Cmwlth. 238, 484 A.2d 232 (1984) (registered nurse who failed to take minimal steps necessary to obtain certification); *Hicks v. UCBR*, 34 Pa.Cmwlth. 352, 383 A.2d 577 (1978) (same); *Chacko v. UCBR*, 49 Pa.Cmwlth. 148, 410 A.2d 418 (1980) (same); *Millersville State College v. UCBR*, 18 Pa.Cmwlth. 238, 335 A.2d 857 (1975) (professor who failed to begin obtaining required doctorate degree). Rarely if ever do any of the cases articulate a reason as to why eligibility was analyzed under section 402(e) and not section 3, or vice versa; in fact, the choice seems to be made by the "luck of the draw," *i.e.*, by the section initially chosen by the referee or Board. As in the instant case, it may be of critical importance in certain cases whether eligibility is determined under section 402(e) or section 3, for "willful misconduct" has been held to require some degree of culpability on the part of claimant rising beyond mere negligence. In *Frumento v. UCBR, supra,* this Court accepted the Superior Court's definition of "willful misconduct," stating:

The dispute arises because the statute does not define the term "willful misconduct." The Superior Court has had an occasion to define this concept as:

" 'Willful misconduct' ... has been held to comprehend an act of wanton or willful disregard of the employer's interest, a deliberate violation of the em-

---

**1.** The seven Commonwealth Court decisions were: *Smith v. UCBR,* 29 Pa.Cmwlth. 292, 370 A.2d 822 (1977); *Strokes v. UCBR,* 29 Pa.Cmwlth. 584, 372 A.2d 485 (1977); *Huff v. UCBR,* 40 Pa.Cmwlth. 11, 396 A.2d 94 (1979); *Collins v. UCBR,* 39 Pa.Cmwlth. 389, 395 A.2d 667 (1978); *Mooney v. UCBR,* 39 Pa.Cmwlth. 404, 395 A.2d 675 (1978); *Katz v. UCBR,* 40 Pa.Cmwlth. 1, 396 A.2d 480 (1979); *Gulick v. UCBR,* 37 Pa.Cmwlth. 73, 388 A.2d 1154 (1978).

ployer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer." *Moyer Unemployment Compensation Case*, 177 Pa.Super. 72, 74, 110 A.2d 753, 754 (1955).

See also *Davis v. Unemployment Compensation Board of Review*, 187 Pa.Super. 116, 117, 144 A.2d 452, 454 (1958).

466 Pa. at 83–84, 351 A.2d 631. Under this formulation, an employee's ordinary negligence, while perhaps sufficient to justify his or her discharge, is not sufficient to disqualify the employee from unemployment compensation benefits unless that negligence indicates an intentional or willful disregard of standards of behavior which the employer has a right to expect of his employees or indicates an intentional disregard of the employer's interest or the duties or obligations of the employee to the employer. *See, e.g., Zuraw v. UCBR*, 61 Pa.Cmwlth. 548, 434 A.2d 1312 (1981); *Pryor v. UCBR*, 82 Pa.Cmwlth. 523, 475 A.2d 1350 (1984); *Coleman v. UCBR*, 47 Pa.Cmwlth. 113, 407 A.2d 130 (1979) (truck driver's two negligent accidents leading to his discharge did not constitute "such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest ...."); *Taylor v. UCBR*, 84 Pa.Cmwlth. 632, 480 A.2d 377 (1984).

While I agree that some off-job conduct not directly connected with performance of employment duties may constitute "fault," it is anomalous to hold, as the majority does, that mere *voluntary* actions rise to a sufficient level of culpability to disqualify a claimant from receiving unemployment compensation benefits. This is particularly anomalous—and improper—because, just as the "fault" disqualification provisions of section 3 are a "constituent part of" the Act, so too are its humanitarian, remedial objectives which this Court has held requires liberal construction of its

provisions and resolution of doubtful cases in favor of coverage for the claimant. As we stated in *Penn Hills School Dist. v. UCBR*, 496 Pa. 620, 437 A.2d 1213 (1981):

> As this Court has observed, section 3 "is not merely a perfunctory preface, but is, rather, the keystone upon which the individual sections of the Act must be interpreted and construed." ... The objective of the Act, as declared in section 3, is to insure that employees who become unemployed involuntarily are provided some semblance of economic security, ... or, as more recently expressed "to aid those individuals who, through no fault of their own, face the grim prospect of unemployment."
>
> .     .     .     .     .
>
> Mindful of this remedial, humanitarian objective, the courts have always interpreted the benefits sections liberally and broadly to alleviate the distress of the involuntarily unemployed. ... Accordingly, a cardinal principle of construction has developed—an unemployed worker can be denied benefits only by *explicit* language in the Act which clearly and plainly excludes that worker from its coverage. ...
>
> In determining whether a disqualification is appropriate, "the test is not whether the claimant has taken himself out of the scope of the Act but whether *the Act specifically excludes him from its provisions. This is what is meant by a liberal and broad construction."* ... Moreover, there exists a *presumption* that an unemployed worker who registers for unemployment is eligible for benefits. ... "[O]rdinarily it will be presumed that a claimant who registers is able and available for work. By registering, the claimant makes out a prima facie case of availability, which is of course rebuttable by countervailing evidence...." ... Absent such evidence demonstrating that the claimant is specifically disqualified by some explicit section of the Act, the unemployed claimant is eligible for benefits.

496 Pa. at 624–25, 437 A.2d 1213 (citations omitted; emphasis added). *See also LeGare v. UCBR*, 498 Pa. 72, 76–77,

444 A.2d 1151 (1982). *Frumento v. UCBR, supra; Lybarger Unemployment Case*, 418 Pa. 471, 211 A.2d 463 (1965).

For the foregoing reasons, I would hold that eligibility for benefits is to be determined under section 402(e) ("willful misconduct") where the claimant's deficient conduct on the job or in direct performance of duties for the employer results in his or her dismissal, and under section 3 ("fault") where off-job or only indirectly job-related conduct results in dismissal because that conduct has impaired the claimant's ability to perform his or her duties at work or has reflected adversly upon the claimant's fitness for employment. I would further hold that, for the latter to constitute "fault," it must rise to the same level of culpability as is established by section 402(e) and the cases interpreting that section. Thus, disqualifying conduct amounting to "fault" would be an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a deliberate disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating intentional disregard of the employer's interest or of the employee's duties and obligations to the employer. *Frumento v. UCBR, supra* 466 Pa. at 83–84, 351 A.2d 631.

Under these standards for determining "fault," appellant should not have been disqualified from receiving unemployment compensation benefits. Appellant made substantial efforts and progress towards completing her course requirements. She finished two courses and attempted to complete her third required course, for which she paid her tuition fee, but was not able to do so in time due to delays in receiving her correspondence course materials and the fact that the local campus of Penn State University did not offer the course in the summer of 1981 when she had planned to take it. Moreover, appellant was under the reasonable impression that her emergency certificate would be reissued if she began the third required course before it expired, and her emergency application for reissuance was, in fact, initially approved by the Superintendent of her

employer/school, West Branch. At most, appellant was guilty of some minor negligence or lack of utmost diligence in not taking *all* of the steps *necessary* to ensure that her course work would be completed on time.

The referee found that appellant's failure to obtain her proper teaching certificate did not disqualify her under section 402(e) for willful misconduct, but did constitute "fault" under section 3. The Board affirmed, stating that her failure and delay in pursuing the additional course work was "due to the claimant's belief that she would receive another emergency certificate to teach another year; she had domestic obligations; she was not aware of the possibility of taking a correspondence course and she did not know that Penn State University did not offer the required study course." Board's Findings of Fact No. 6. The Commonwealth Court characterized appellant's failure to obtain proper certification as "shortcomings," and the majority of this Court describes that failure as a *"voluntary action"* that was causally connected to her subsequent unemployment. No one has ever viewed appellant's conduct as a deliberate, willful, or intentional disregard of her employer's interests or a deliberate, willful or intentional violation of her employer's rules, policies or expected standards of behavior.

It should be clear that appellant's conduct fell far short of that level of culpability or "fault" sufficient to disqualify a claimant from unemployment compensation benefits. To the contrary, the record discloses that appellant made substantial, good-faith efforts to meet the certification requirements in her employer's interest (as well as her own) and to fulfill her duties and obligations to her employer. Her failure to complete her course requirements was due not to any willful or intentional disregard for or violation of her employer's policies, rules or interest but was, rather, due to the obvious difficulty of juggling her four full-time careers as teacher, student, wife and mother, and her inadvertent failure to successfully juggle those careers to the satisfac-

tion of the Pennsylvania Department of Education which declined to reissue her emergency certification.

In holding that Ms. Jones' discharge and "unemployment was the result of her own fault," majority at 52, and denying her unemployment compensation benefits because of her "shortcomings' which amounted to *no more than* ordinary negligence (if that), the majority's platitude that "we are not insensitive to the demands placed on a wife and mother who also works full-time outside the home," *id.* at 52, has a hollow and patronizing ring under the circumstances. Accordingly, I must vigorously dissent.